**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| TIMOTHY MERRICK, D.C. d/b/a ALIVE & WELL CHIROPRACTIC, JOSHUA I. KANTOR, D.C., JASON PIKEN, D.C. d/b/a INNATE CHIROPRACTIC OF MANHATTAN, and CRAIG FISHEL, D.C., on behalf of themselves and all others similarly situated, | Civil Action No. 14-CV-8071 (ER) (Oral Argument Requested) |

                         Plaintiffs,

                  -against-

UNITEDHEALTH GROUP INC.,
UNITEDHEALTHCARE, INC.,
UNITEDHEALTHCARE SERVICES, INC.,
OPTUM, INC. and OPTUMHEALTH, INC.

                         Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL**
**ARBITRATION WITH PLAINTIFF MERRICK AND TO DISMISS HIS CLAIMS**

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414

Times Square Tower
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

*Attorneys for Defendants UnitedHealth*
*Group Inc., United HealthCare, Inc.,*
*UnitedHealth Services, Inc., Optum, Inc.,*
*and Specialty Benefits, LLC (f/k/a*
*OptumHealth, Inc.)*

February 27, 2015

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ............................................................................................... 2

    A.    Merrick's Network Agreements .......................................................... 2

    B.    Merrick's Complaint ............................................................................ 4

ARGUMENT ...................................................................................................... 6

I.    MERRICK IS OBLIGATED TO ARBITRATE THE PAYMENT DISPUTE ASSERTED IN HIS COMPLAINT .................................................................. 6

II.    MERRICK'S CLAIMS SHOULD BE DISMISSED ..................................... 10

CONCLUSION ................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Application of Whitehaven S.F., LLC v. Spangler,*
  __ F. Supp. 3d __, No. 13 Civ. 8476, 2014 WL 4494168 (S.D.N.Y. Sept. 10, 2014) .............. 7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
  475 U.S. 643 (1986)............................................................................................................ 7

*Benzemann v. Citibank N.A.,*
  No. 12 Civ. 9145, 2014 WL 2933140 (S.D.N.Y. June 27, 2014)........................................ 10

*Bird v. Shearson Lehman/Am. Express, Inc.,*
  926 F.2d 116 (2d Cir. 1991) ................................................................................................ 8

*CardioNet, Inc. v. Cigna Health Corp.,*
  751 F.3d 165 (3d Cir. 2014) .......................................................................................... 9, 10

*Chestnut v. Whitehaven Income Fund I, LLC,*
  No. 12 cv 8854, 2014 WL 5388562  (S.D.N.Y. Oct. 23, 2014) ......................................... 7, 8

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,*
  58 F.3d 16 (2d Cir. 1995) .................................................................................................... 8

*Haining Zhang v. Schlatter,*
  557 F. App'x 9 (2d Cir. 2014) ............................................................................................. 8

*In re Arbitration Between Gen. Sec. Nat. Ins. Co & AequiCap Program Adm'rs,*
  785 F. Supp. 2d 411 (S.D.N.Y. 2011) .................................................................................. 8

*Mahant v. Lehman Bros.,*
  No. 99 Civ. 4421, 2000 WL 1738399 (S.D.N.Y. Nov. 22, 2000) ....................................... 10

*Meinders v. UnitedHealthCare, Inc.,*
  No. 3:14-cv-00548, 2014 WL 6478026 (S.D. Ill. Nov. 19, 2014)......................................... 7

*Mineola Garden City Co.. v. Bank of Am.,*
  __ F. Supp. 2d __, 2014 WL 2930467 (E.D.N.Y. June 26, 2014)......................................... 7

*Montefiore Med. Ctr. v. Teamsters Local 272,*
  642 F.3d 321 (2d Cir. 2011) ................................................................................................ 9

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,*
  322 F.3d 147 (2d Cir. 2003) ................................................................................................ 6

**TABLE OF AUTHORITIES**
*(Continued)*

**Page(s)**

**<u>Statutes and Regulations</u>**

N.Y. Comp. Codes R. & Regs. tit. 10, § 98-1 .............................................................................. 2

**<u>Other Authorities</u>**

Dep't of Labor, FAQs About Benefit Claims Procedure Regulation ............................................. 9

United[1] respectfully submits this memorandum of law in support of its motion to compel arbitration with Plaintiff Timothy Merrick ("Merrick") and to dismiss his claims.

## INTRODUCTION

Merrick has agreed to arbitrate the overpayment dispute he brings in this action.  By his own account, Merrick is a chiropractor contracted with United as an "in-network" provider, pursuant to two network agreements.  Those agreements specify the terms and conditions that govern Merrick's payment for providing services to United-covered patients.  When Merrick refused to submit documentation substantiating his billings for such services, as he alleges in the Complaint, those agreements specifically authorized United to redetermine its payment on those claims.  And because the agreements include a commitment by Merrick to arbitrate disputes "about the[ parties'] business relationship" or "arising out of or relating to th[e network a]greement," his claims that United was forbidden to recover its overpayments to him are not open to litigation.

Merrick's assertion that the ERISA claims regulation will provide the rule of decision for this dispute is no basis for keeping it in federal court.  The arbitrator is perfectly capable of applying ERISA to Merrick's claims if Merrick is correct that the claims regulation supports them.  He is not correct about that, in any case.  The Department of Labor ("DOL"), which promulgated the claims regulation, has expressly recognized that it does not apply to payment disputes between network providers and insurers where—as here—the provider cannot bill the patient for unpaid sums.  Merrick has contractually agreed not to balance bill his patients for amounts not paid by United, and therefore this dispute will have no impact on those patients

---

[1] Defendants UnitedHealth Group, Inc., UnitedHealthCare, Inc., UnitedHealthCare Services, Inc., Optum, Inc., and Specialty Benefits, LLC (formerly known as OptumHealth, Inc.) are here referred to collectively as "United."

however it is resolved.  Because Merrick's claims cannot be litigated in this Court, they should

be dismissed.

# BACKGROUND

## A.    Merrick's Network Agreements

Merrick specifically alleges that he "has executed a provider contract with Defendants."

Compl. ¶ 15.  In fact, Merrick has executed two network agreements, one with United's New

York HMO/IPA[2] network (ACN Group IPA of New York, Inc.), and the other with United's

New York non-HMO/non-IPA network (ACN Group, Inc.).[3]  *See* Decl. of Steven Vynorius in

Supp. of Defs.' Mot. to Compel Arbitration with Pl. Merrick and to Dismiss His Claims

("Vynorius Decl."), Ex. 1 (the "Non-HMO Agreement"), Ex. 2 (the "HMO Agreement").  Both

were first signed by Merrick on March 21, 2011, and, because neither side has exercised rights of

termination, both agreements have renewed automatically each year thereafter.  HMO

Agreement § 4 & p. 16; Non-HMO Agreement § 9.1 & p. 11; Vynorius Decl. ¶¶ 2, 4 (neither

Merrick nor the ACN entities have terminated).

Merrick's network agreements are similar in substance.  Both specify the requirements

that apply to the submission, billing, processing, and payment of claims for services Merrick

provides to United insureds.  *See, e.g.*, HMO Agreement §§ 3.4, 6; Non-HMO Agreement

§§ 3.3, 4.  Each agreement expressly incorporates an Operations Manual that specifies additional

rights and obligations of the parties.  *See* HMO Agreement § 3.4; Non-HMO Agreement § 3.3;

---

[2] "IPA" stands for "independent practice association"; "HMO" stands for "health
maintenance organization."  Together, they are a means of providing managed care and are
regulated under New York law separately from other forms of insurance.  *See generally* N.Y.
Comp. Codes R. & Regs. tit. 10, § 98-1.

[3] ACN Group, Inc. has changed its name to OptumHealth Care Solutions, Inc.  Vynorius
Decl. ¶ 3.  Both OptumHealth Care Solutions, Inc. and ACN Group IPA of New York, Inc. are
wholly owned subsidiaries of defendant UnitedHealth Group Inc.  *Id.* ¶¶ 3, 5.

Vynorius Decl. Ex. 3 ("2015 Operations Manual"); Vynorius Decl. Ex. 4 ("2012 Operations

Manual").  Both agreements obligate Merrick to retain and submit clinical records on request.

*See, e.g.*, HMO Agreement §§ 6.1, 11; Non-HMO Agreement §§ 4.3, 7; 2015 Operations

Manual, at 27; 2012 Operations Manual, at 26.  Under both agreements, United has the right to

deny and recover payments (including by offset) for which supportive records were not provided

as requested.  *See* HMO Agreement §§ 6.1, 6.3; Non-HMO Agreement §§ 4.2, 4.3; 2015

Operations Manual, at 18, 27; 2012 Operations Manual, at 17, 26.  Merrick is specifically

prohibited from balance billing his patients for payments denied because of Merrick's

noncompliance with administrative requirements such as his obligation to provide clinical

records.  *See* HMO Agreement § 6.3; Non-HMO Agreement § 4.2; 2015 Operations Manual, at

17, 19; 2012 Operations Manual, at 16, 18.

Merrick's network agreements also each contain a provision for arbitration.  The HMO

Agreement provides for the arbitration of "any dispute arising out of or relating to this

Agreement":

> In the event of any dispute arising out of or relating to this Agreement, Provider
> and IPA shall first attempt in good faith to resolve the dispute mutually between
> themselves.  Provider may submit any dispute to IPA for resolution in writing.
> IPA may submit any dispute to Provider by contacting Provider in writing.  If
> Provider and IPA are unable to resolve a dispute by mutual agreement, the matters
> in controversy may be submitted, upon the motion of either party, to arbitration
> under the Commercial Rules of the American Arbitration Association (AAA).  All
> such arbitration proceedings shall be administered by the AAA in New York.  The
> arbitrator shall be bound by applicable state and federal law, and shall issue a
> written opinion setting forth findings of fact and conclusions of law.  Provider and
> IPA agree that the decision of the arbitrator shall be final and binding as to each
> of them….  Should the parties, prior to submitting a dispute to arbitration, desire
> to utilize other impartial dispute resolution techniques such as mediation or fact-
> finding, a joint request for such services may be made to the AAA, or the parties
> may initiate such other procedures as they may mutually agree upon at such
> time….

HMO Agreement § 23.  The Non-HMO Agreement similarly provides that the parties will

resolve "any disputes about their business relationship" by arbitration:

> ACN and Provider will work together in good faith to resolve any disputes about
> their business relationship.  If the parties are unable to resolve the dispute within
> 30 days following the date one party sent written notice of the dispute to the other
> party, and if ACN or Provider wishes to pursue the dispute, it shall be submitted
> to binding arbitration in accordance with the rules of the American Arbitration
> Association.  In no event may arbitration be initiated more than one year
> following the sending of written notice of the dispute.  Any arbitration proceeding
> under this Agreement shall be conducted in a location agreed to by the parties or
> as selected by the AAA if the parties cannot agree on a location.  The arbitrators
> may construe or interpret but shall not vary or ignore the terms of this Agreement
> or the Members' Benefit Contract, shall have no authority to award any punitive
> or exemplary damages, and shall be bound by controlling law.  If the dispute
> pertains to a matter which is generally administered by certain ACN procedures,
> such as claims payment, credentialing or quality improvement plan, the
> procedures set forth in that plan must be fully exhausted by Provider before
> Provider may invoke his or her right to arbitration under this section.  The parties
> acknowledge that because this Agreement affects interstate commerce the Federal
> Arbitration Act applies.

Non-HMO Agreement § 8.

**B.     Merrick's Complaint**

Merrick runs a business called Alive & Well Chiropractic, providing "chiropractic

services" to patients in New York.  Compl. ¶ 3.  In accordance with his network agreements,

Merrick bills United directly for services he provides to members of plans insured or

administered by United, and United reimburses him directly for those services.  *Id*. ¶ 15; HMO

Agreement § 6; Non-HMO Agreement § 4.  Merrick alleges that the defendants insure,

administer, or otherwise provide services to health plans subject to ERISA.  Compl. ¶¶ 7-11.

Merrick alleges that United contacted him by letter on May 17, 2013 reiterating a prior

request for patient records in connection with identified service dates in 2012.  *Id*. ¶ 91.[4]  Merrick

---

[4] Merrick does not allege when the initial request for records was made.

alleges that he "did not forward the requested information and did not otherwise reply to the May 17, 2013 letter" because he believed he was not legally required to do so.  *Id.* ¶ 92.  On September 5, 2013, United allegedly requested that Merrick refund overpayments for services billed in connection with certain of the patients and dates identified in the May 17, 2013 letter. *Id.* ¶ 93.  On September 20, 2013, United allegedly requested Merrick to provide records for particular patients, this time for certain service dates in 2013.  *Id.* ¶ 94.  Again, Merrick alleges he "did not forward the requested information and did not otherwise reply to the September 20, 2013 letter."  *Id.* ¶ 95.  United allegedly sent Merrick letters requesting the refund of payments for the services for which he refused to provide clinical documents on October 28, 2013, January 14, 2014, January 15, 2014, and March 27, 2014.  *Id.* ¶¶ 96-99.  Merrick does not allege that he responded to these letters in any way.  The excerpts Merrick includes in the Complaint show that he was promptly paid on the claims he submitted.  *See, e.g.*, *id.* ¶ 96 (payment less than two weeks after date of service).

Merrick alleges that United later recovered these overpayments by offset, that is, by reducing subsequent payments to him by the overpayment amount.  *See* Compl. ¶¶ 100-04. Merrick brings putative class claims alleging that the ERISA claims regulation, 29 C.F.R. § 2560.503-1, forbids United to redetermine prior payments beyond set time limits, or to recover previously paid amounts.  *Id.* ¶ 136.  Merrick alleges that his network agreement "cannot preempt or otherwise contravene the ERISA claims regulations," *id.* ¶ 19, and he believes that his network agreement makes him a statutory beneficiary under ERISA who is thus eligible to pursue claims for benefits directly, *id.* ¶ 90.  Count I of the Complaint, a claim for benefits brought pursuant to ERISA § 502(a)(1)(B), seeks repayment of recouped sums.  *Id.* ¶¶ 141-44.

Count II, brought under ERISA § 502(a)(3), seeks to enjoin United from redetermining prior payments and recovering them in any way. *Id.* ¶¶ 146-49.

**ARGUMENT**

**I.    MERRICK IS OBLIGATED TO ARBITRATE THE PAYMENT DISPUTE ASSERTED IN HIS COMPLAINT**

It requires no inference from the express allegations in the Complaint to conclude that Merrick violated the terms of his network agreements when he refused to provide documentation substantiating his bills for services purportedly rendered to United plan members.  The only question presented by the Complaint is whether United was entitled to adjust its prior payments for those services consistent with the network agreements and with any applicable requirements of ERISA.  That question must be arbitrated because it plainly concerns a "dispute about [the parties'] business relationship" (Non-HMO Agreement § 8) and a "dispute arising out of or relating to th[e a]greement" (HMO Agreement § 23).

Merrick has proposed various reasons why he should be able to renege on his agreement to arbitrate all disputes.  None has merit.

First, by letter to the Court Merrick has suggested that the network agreements do not apply here because "no Defendant is a party to [them]."  Dkt. 34, at 2.  He has pleaded to the contrary, *see* Compl. ¶ 15 ("Merrick has executed a provider contract ***with Defendants***" (emphasis added)), and his statement in the Complaint that he is contracted with all the defendants through his network agreement is a judicial admission that binds him throughout this proceeding.  *See, e.g.*, *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (allegations in complaint were "judicial admissions by which [plaintiff] was bound throughout the course of the proceeding" (quotation omitted)).

Merrick is also incorrect in asserting that no defendant is a party to his network agreements.  Merrick has brought claims against ACN Group, Inc.—now known as OptumHealth Care Solutions, Inc., *supra* n.3—and if the other entities he has sued are proper defendants to his claims at all, it is through the network agreements.  *See, e.g.*, *Meinders v. UnitedHealthcare, Inc.*, No. 3:14-cv-00548, 2014 WL 6478026, at *3 (S.D. Ill. Nov. 19, 2014) ("Based on the pleadings it is clear that United has assumed the material obligations of ACN Group, a wholly owned subsidiary of United, under the Provider Agreement, which authorizes United to enforce the arbitration clause.").  United has met its burden of "showing that an agreement to arbitrate exists."  *Mineola Garden City Co.. v. Bank of Am.*, __ F. Supp. 2d __, 2014 WL 2930467, at *2 (E.D.N.Y. June 26, 2014) (quotation omitted).

Second, Merrick contends this dispute does not come within the scope of the arbitration provisions in his network agreements.  Dkt. 34, at 2.  But Merrick's arbitration obligations are stated in the broadest possible terms—so broad, indeed, that they bring to bear the "presumption in favor of arbitrating [his] claims."  *Chestnut v. Whitehaven Income Fund I, LLC*, No. 12 cv 8854, 2014 WL 5388562 at *1 (S.D.N.Y. Oct. 23, 2014); *see AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (when a broad arbitration clause contains no "express provision excluding a particular grievance from arbitration, ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail" (citation omitted)); *Application of Whitehaven S.F., LLC v. Spangler*, __ F. Supp. 3d __, No. 13 Civ. 8476, 2014 WL 4494168, at *7 (S.D.N.Y. Sept. 10, 2014) (because "federal policy strongly favors arbitration as an alternative dispute resolution process ... any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (quotation omitted)).  Courts within the Second Circuit have held time and again that arbitration provisions applying to "any disputes" connected

to the parties' agreement or relationship must be broadly interpreted. *See, e.g.*, *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (clause "submitting to arbitration 'any claim or controversy arising out of or relating to the agreement'"); *Chestnut*, 2014 WL 5388562, at *1 (same); *Haining Zhang v. Schlatter*, 557 F. App'x 9, 13 (2d Cir. 2014) (arbitration agreement covering "[a]ny controversy, dispute or claim regarding the interpretation or performance of this Agreement" (alteration in original)); *In re Arbitration Between Gen. Sec. Nat. Ins. Co & AequiCap Program Adm'rs*, 785 F. Supp. 2d 411, 418 (S.D.N.Y. 2011) ("As a threshold matter, arbitration provisions that specify that 'any disputes' shall be determined by arbitration are typically deemed to be 'broad' arbitration provisions.").

Here, as explained above, the relationship between the payment dispute and Merrick's network agreements is not merely general in nature (though that would be enough to compel arbitration). The agreements ***directly control*** his right to payment when he refuses to provide supportive clinical records. *See supra* at 2-3. Merrick's attempt to bring ERISA to bear on this dispute does not avoid its connection to the parties' agreements and business relationship, and there is no barrier to an arbitrator's ability to evaluate whether Merrick's interpretation of ERISA has merit. *See, e.g.*, *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 119-22 (2d Cir. 1991) ("We hold that Congress did not intend to preclude a waiver of a judicial forum for statutory ERISA claims. We further hold that the FAA requires courts to enforce agreements to arbitrate such claims."). Indeed, Merrick himself alleges that his network status is the very basis for his alleged standing to bring this action at all. *See* Compl. ¶ 90 ("***As an in-network provider***, Dr. Merrick is a statutory beneficiary …." (emphasis added)). A factfinder simply cannot resolve this dispute without engaging Merrick's network agreements as well.

8

Finally, Merrick argues that he can avoid arbitration because his arbitration agreements are "preempted" by ERISA.  Dkt. 34, at 2.  But the DOL—the agency that promulgated the claims regulation on which Merrick bases his claims—has explained unequivocally that:

> The regulation does not apply to requests by health care providers for payments due them—rather than due the claimant—in accordance with contractual arrangements between the provider and an insurer or managed care organization, where the provider has no recourse against the claimants for amounts, in whole or in part, not paid by the insurer or managed care organization.

Dep't of Labor, FAQs About Benefit Claims Procedure Regulation, at A-8, *available at* https://web.archive.org/web/20150227154738/http://www.dol.gov/ebsa/faqs/faq_claims_proc_reg.html.  Because Merrick is contractually bound not to seek reimbursement from his patients for amounts unpaid by United on account of his failure to provide requested records, *supra* at 3, those members' ERISA rights, the terms of their plans, and the claims regulation are not at issue here in any way.[5]  However this payment dispute is resolved, the members will not owe Merrick anything for the services they obtained from him.

Merrick's attempt to make use of the Third Circuit's recent decision in *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165 (3d Cir. 2014), thus misses the point.  In *CardioNet*, the plaintiff providers were advancing derivative claims on behalf of their patients, challenging coverage determinations under the terms of their patients' health plans.  The Third Circuit held that those derivative claims were not subject to the providers' arbitration agreements because

---

[5] For this reason, Merrick's claims do not implicate the Second Circuit's decision in *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321 (2d Cir. 2011), involving an in-network provider **with** recourse against his patients.  *See id.* at 330 & n.9 (finding provider standing through an alleged patient assignment, where "patients are likely to be held liable for the services they receive," but noting that the court was not presented with "the question of whether a beneficiary can make a valid assignment to his in-network health care provider in the hypothetical situation in which the provider has expressly contracted **not** to seek full payment from the beneficiary" (emphasis in original)).

(1) the members were not party to the arbitration agreements, and (2) the ERISA claims asserted

on the members' behalf would have a direct impact on their ERISA benefits under the terms of

their ERISA plans.  *See id.* at 176-79.  In contrast, as United has explained, Merrick's claims

here will not affect the ERISA plan members' benefits at all because he has contractually

committed not to bill the patients for any overpayments that United has recovered under the

network agreements.  The *CardioNet* court itself appreciated this difference.  *See CardioNet*, 751

F.3d at 177-78 ("a provider may bring a contract action for an insurer's failure to reimburse the

provider pursuant to the terms of the agreement, while a claim seeking coverage of a service may

only be brought under ERISA" (citation omitted)).  Merrick is attempting to assert his ***own*** right

to reimbursement, and his ***own*** arbitration agreements encompass that determination.  Merrick's

patients have no interest whatsoever in this payment dispute.  Whether the network agreements

alone control this payment dispute or the claims regulation has some application, Merrick is

bound to take it up with an arbitrator.

## II.     MERRICK'S CLAIMS SHOULD BE DISMISSED

Because Merrick's claims are subject to arbitration, there is "no reason to stay—rather

than dismiss—this action."  *Mahant v. Lehman Bros.*, No. 99 Civ. 4421, 2000 WL 1738399, at

*3 (S.D.N.Y. Nov. 22, 2000).  The Court should therefore exercise its discretion to dismiss

Merrick's claims after compelling arbitration of the same.  *See, e.g.*, *Benzemann v. Citibank,

N.A.*, No. 12 Civ. 9145, 2014 WL 2933140, at *5 (S.D.N.Y. June 27, 2014) ("[I]f this Court were

to decide the question of whether plaintiff's dispute with Citibank is subject to arbitration under

the Agreement—rather than compelling arbitration of that question, as is our holding—we would

find that plaintiff's claims are plainly covered. This determination reinforces our decision to

grant the motion to dismiss the complaint as to Citibank and to compel arbitration.").

## CONCLUSION

For each of the foregoing reasons, United respectfully asks the Court to compel

arbitration of Plaintiff Merrick's claims and to dismiss them from this litigation.

Dated: Washington, D.C.

February 27, 2015

Respectfully submitted,

O'MELVENY & MYERS LLP

By: /s/ Gregory F. Jacob
Gregory F. Jacob (*pro hac vice*)
Brian D. Boyle (*pro hac vice*)
Meaghan VerGow (*pro hac vice*)
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414
gjacob@omm.com
bboyle@omm.com
mvergow@omm.com

Sloane Ackerman
Times Square Tower
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
sackerman@omm.com

*Attorneys for Defendants UnitedHealth
Group Inc., United HealthCare, Inc.,
UnitedHealth Services, Inc., Optum, Inc.,
and Specialty Benefits, LLC (f/k/a
OptumHealth, Inc.)*