UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TIMOTHY MERRICK, D.C. d/b/a ALIVE &          :
WELL CHIROPRACTIC, JOSHUA I.                 :
KANTOR, D.C., JASON PIKEN, D.C. d/b/a        :
INNATE CHIROPRACTIC OF                       :
MANHATTAN, and CRAIG FISHEL, D.C.,           :          **OPINION AND ORDER**
on behalf of themselves and all others similarly    :
situated,                                    :          14 Civ. 8071 (ER)
                                             :
            Plaintiffs,                      :
                                             :
        - against -                          :
                                             :
UNITEDHEALTH GROUP INCORPORATED,             :
UNITEDHEALTHCARE, INC.,                      :
UNITEDHEALTHCARE SERVICES, INC.,             :
OPTUM INC., and OPTUMHEALTH, INC.,           :
                                             :
            Defendants.                      :
------------------------------------------------------------x

Ramos, D.J.:

        Four Chiropractors, Timothy Merrick, D.C. ("Merrick"), Joshua Kantor D.C. ("Kantor"),

Jason Piken, D.C. ("Piken"), and Craig Fishel D.C. ("Fishel," and collectively "Plaintiffs"),

assert a class action on behalf of themselves and others similarly situated, against UnitedHealth

Group Incorporated, UnitedHealthcare, Inc., UnitedHealthcare Services, Inc., Optum, Inc., and

OptumHealth, Inc. (collectively, "Defendants" or "United"), asserting violations of the

Employee Retirement Income Security Act of 1974 ("ERISA").  In the instant motion, United

moves to dismiss Kantor, Piken, and Fishel.  For the reasons set forth below, United's motion is

GRANTED.

## I.  Factual Background[1]

Plaintiffs are healthcare providers licensed to provide chiropractic services in New York. Am. Compl. ¶¶ 1, 4-6.  Plaintiffs provide healthcare services to patients covered under United healthcare plans governed by ERISA ("Covered Patients").  *Id.* ¶¶ 1, 14, 19, 53.  Three Plaintiffs, Kantor, Piken, and Fishel, are "out-of-network providers," while Merrick is an "in-network" healthcare provider.  *Id.* ¶ 19.  "An 'out-of-network' provider has no contract with United," while "[a]n 'in-network' provider is a provider who has entered into a contractual agreement with United . . . under which the provider has agreed to accept reduced benefits under the Plans for providing healthcare services to Covered [Patients] ('Provider Agreements')."  *Id.* ¶ 18.  The instant motion involves only the out-of-network Plaintiffs.  According to Plaintiffs, Covered Patients routinely authorize them, as providers, to receive payments from United.  *Id.* ¶ 65-69, 97-101, 142-148.   As a result, Plaintiffs bill directly to and receive payments directly from United for services provided to Covered Patients.  *Id.* ¶¶ 19, 67-69, 99-101, 146-148.

UnitedHealth Group Incorporated is a health care company incorporated in Delaware.  *Id.* ¶ 7.  UnitedHealthcare, Inc., UnitedHealthcare Services, Inc., Optum, Inc., and OptumHealth, Inc., doing business as OptumHealth Care Solutions Inc., are wholly owned subsidiaries of UnitedHealth Group Incorporated.  *Id.* ¶¶ 8-11.  Plaintiffs allege that United is a Plan and/or Claims Administrator as defined by ERISA, and is therefore, responsible for determining

---

[1] The following factual background is based on the allegations in the Amended Complaint, Doc. 52, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  In addition, the Court considers documents incorporated by reference and any documents that Plaintiffs relied upon in bringing the instant action.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

whether a given claim is covered under the healthcare plans and effectuating payment for any covered services.  *Id.* ¶¶ 7, 17.

Plaintiffs assert putative class action claims against United for purported violations of the ERISA claims regulation, 29 C.F.R. §2560.503-1 ("Claims Regulation").  *Id.* ¶ 46.  According to Plaintiffs, when a Plan or Claim Administrator renders an initial decision on claims, "meaning the decision rendered before any appeal of a claim determination," the Claims Regulation requires claimant, in this case Plaintiffs, to be notified of an "adverse benefit determination"[2] made by the Plan "no[] later than 30 days after receipt of the claim."  *Id.* ¶ 25 (citing 29 C.F.R. §2560.503-1(f)(2)(iii)(B)).  This time period "may be extended one time by the plan for up to 15 days, provided the plan administrator determines such an extension is necessary . . . and notifies the claimant, prior to the expiration of the initial 30-day period[.]"  *Id.*  Plaintiffs claim that United originally "voluntarily paid . . . benefits within the required time limits set out in the Claims Regulation" but then reversed its initial benefit determination on numerous occasions after the thirty-day time period passed, and, without requesting an extension, requested that Plaintiffs refund the amount allegedly overpaid by United for these benefits.  *Id.* ¶¶ 1, 60-62, 187.  Specifically, Plaintiffs allege that United sent them letters requesting patient's clinical records after the thirty-day period had passed, and then recouped the allegedly overpaid amounts when Plaintiffs declined to provide clinical records on the basis that United could no longer

---

[2] The Claims Regulation defines "Adverse Benefit Determination," in relevant part, as:

> [A] denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, or termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan . . . .

*Id.* ¶ 26 (citing 29 C.F.R. §2560.503-1(m)(4)).

question the claims.  *Id.* ¶¶ 60, 62, 73-69, 105-120, 152-165.  United allegedly recouped the

overpaid amounts by offsetting these amounts from approved claim payments owed to the same

providers for services provided to different patients under different healthcare plans.  *Id.* ¶¶ 62,

91, 96, 116, 120, 160, 165, 187.  Plaintiffs assert that United's recoupment of previously paid

claims amount to an "Adverse Benefit Determination" as defined in the Claims Regulation.  *Id.*

¶¶ 26, 169, 173.

Plaintiffs allege that they have standing to sue for ERISA benefits as plan designated

beneficiaries (asserting "rights to receive benefits as expressly designated pursuant to the terms

of" the plan), or as assignees asserting ERISA claims on behalf of Covered Patients as

participant designated beneficiaries (asserting rights transferred by their patients), or assignees of

their patients (same).  *Id.* ¶¶ 54-59.  Specifically at issue in the instant motion are Covered

Patients' alleged assignments of their ERISA benefits to out-of-network Plaintiffs, Kantor, Piken

and Fishel, samples of which are attached to the Amended Complaint.  *See id.* ¶¶ 65 ("I . . .

assign directly to Dr. Kantor all insurance benefits, if any, otherwise payable to me for services

rendered. . . ."); 66; 97 ("I . . . assign directly to Dr. [Piken] all insurance benefits, if any,

otherwise payable to me for services rendered . . . ."); 98; 142 ("I hereby convey to [Dr. Fishel] .

. . any claim, chose in action, or other right I may have to such insurance and/or employee health

care benefit coverage . . . ."); 143 ("I hereby authorize payment to be made directly to Dr. Craig

Fishel D.C., P.C. of all benefits which may be due and payable under insurance coverage for the

above named patient. . . ."); 144 ("I authorize and request my insurance company to pay directly

to the chiropractic group [Dr. Fishel] insurance benefits otherwise payable to me . . . ."); *see also*

*id.* Exs. 5-7 (alleged assignments by Kantor's patients); 8-12 (same from Piken's patients); 18-21

(same from Fishel's patients).  In other words, Plaintiffs claim that, as a result of the forgoing

assignments, they are entitled to sue United for "benefits" under the plan.  However, the

applicable healthcare plans contain the following prohibition on assignments:

> You may not assign your Benefits under the Policy to a non-Network provider without our consent. When an assignment is not obtained, we will send the reimbursement directly to you (the Subscriber) for you to reimburse them upon receipt of their bill. We may, however, in our discretion, pay a non-Network provider directly for services rendered to you. In the case of any such assignment of Benefits or payment to a non-Network provider, we reserve the right to offset Benefits to be paid to the provider by any amounts that the provider owes us.

Am. Compl. Ex. 1 at 66; *see also* Ex. 2 at 67; Ex. 3 at 67; Ex. 4 at 68.[3]  Plaintiffs do not allege

that they sought United's consent to their assignments.  Instead, Plaintiffs assert that United's

course of conduct, including making payments directly to Plaintiffs, may be interpreted as

United's consent or alternatively, as evidence that United waived, or is estopped from relying on,

the anti-assignment provision.  *Id.* ¶¶ 68-72; 100-104; 147-151.

Pursuant to ERISA Section 502(a)(1)(B),[4] Plaintiffs request declaratory relief that (a)

Defendants have no legal authority, after the time set forth in the Claims Regulation, to reverse

benefit determinations it previously made, (b) "cannot recoup monies that have been previously

paid[,]" and (c) future payments owed by United for covered services "shall not be reduced—or

offset—by any amounts" past the time period allotted in the Claims Regulation.  *Id.* ¶¶ 192-194.

Plaintiffs also request monetary judgment and reimbursement under Section 502(a)(1)(B), for

"all amounts . . . taken from Plaintiffs . . . *via* offsetting."  *Id.* ¶ 195.  Pursuant to Section

---

[3] Plaintiffs represent that the plans attached to the Amended Complaint, *see* Am. Compl. Exs. 1-4, are "sample plans" and "the fully-insured and self-insured ERISA-governed United Administered Plans at issue in this matter are similar or identical in their salient features to the four samples annexed hereto." *Id.* ¶ 23.

[4] Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), states:  "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

502(a)(3),[5] Plaintiffs request injunctive relief enjoining United from reversing previously made benefit determinations and offsetting amounts previously paid in violation of the Claims Regulation or, alternatively, requiring United to comply with the Claims Regulation. *Id.* ¶¶ 197-200.

## II.    Procedural Background

On October 7, 2014, Plaintiffs filed their Complaint against United.  Doc. 2.   At a conference held before this Court on January 22, 2015, United was granted leave to file motions to compel arbitration of Plaintiff Merrick's claims and to dismiss the claims of the other three out-of-network Plaintiffs.  On February 27, 2015, United filed the two motions.[6]  Docs. 41, 43. On April 29, 2015, Plaintiffs filed an Amended Complaint.  Docs. 52.  At a conference held before this Court on June 24, 2015, United was granted leave to file the instant motion to dismiss the out-of-network Plaintiffs' claims.[7]

## III.   Legal Standard

When ruling on a motion to dismiss pursuant to the Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *Koch*, 699 F.3d at 145.  The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[5] Section 502(a)(3), 29 U.S.C. § 1132(a)(3), states:  "A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"

[6] On August 31, 2015, the Court granted United's motion to compel arbitration of Plaintiff Merrick's claims and stayed Merrick's action.  Doc. 67.

[7] By Order dated July 27, 2015, United's motion to dismiss the original Complaint was terminated.  Doc. 65.

(2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiffs' claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

## IV.   Discussion

### a.   Plaintiffs' Standing to Bring ERISA Claims

"Section 502(a)(1)(B) limits the class of individuals who can sue to recover benefits due, enforce rights, or clarify rights to future benefits to those individuals who are 'participants' or

7

'beneficiaries' of a benefits plan."  *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 176 (2d Cir. 2001)

(per curiam).  Individuals that may sue under Section 502(a)(3) are similarly limited to

"participants" and "beneficiaries."[8]  *See* 29 U.S.C. § 1132(a)(3).  Under ERISA, a "beneficiary"

is defined as "a person designated by a participant, or by the terms of an employee benefit plan,

who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).  Likewise, a

"participant" is defined as "any employee or former employee . . . who is or may become eligible

to receive a benefit of any type from an employee benefit plan."  *Id.* at § 1002(7).  Only the

parties enumerated in Section 502 may sue directly for relief.  *Simon*, 263 F.3d at 177 (citing

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27 (1983);

*Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 14 (2d Cir. 1991)).  However,

the Second Circuit has "joined the Fifth, Sixth, Seventh, and Ninth circuits in carving out a

narrow exception to the ERISA standing requirements," which "grants standing only to

healthcare providers to whom a beneficiary has assigned his claim in exchange for health care."

*Simon*, 263 F.3d at 178 (internal citations omitted); *I.V. Services of Am., Inc. v. Trustees of Am.*

*Consulting Eng'rs Council Ins. Trust Fund*, 136 F.3d 114, 117 n.2 (2d Cir. 1998) ("We agree

with our sister circuits that, under federal common law, the assignees of beneficiaries to an

ERISA-governed insurance plan have standing to sue under ERISA."); *Mbody Minimally*

*Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13 Civ. 6551 (TPG), 2014 WL

4058321, at *3 (S.D.N.Y. Aug. 15, 2014) ("It is well-established in this Circuit that the assignees

of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA."),

*reconsideration denied*, No. 13 Civ. 6551 (TPG), 2015 WL 798082 (S.D.N.Y. Feb. 25, 2015).

---

[8] Section 502(a)(3) also includes "fiduciary" as a class of individuals that may sue under that section, *see* 29 U.S.C. § 1132(a)(3), however, Plaintiffs do not assert standing on this basis.

Plaintiffs assert that they have standing to bring these ERISA claims as statutory beneficiaries and as assignees of their patient's benefits.  Am. Compl. ¶¶ 54-58.  United, unsurprisingly, disagrees.[9]

### i.  Statutory Beneficiaries

Plaintiffs contend that they are statutory beneficiaries with the authority to bring ERISA claims because they are designated under the plan to receive payment directly from United for services provided to Covered Patients.  *See* Am. Compl. ¶ 54.  The Second Circuit, however, recently held that "[h]ealthcare providers are not 'beneficiaries' of an ERISA welfare plan by virtue of their . . . their entitlement to payment[,]" *Rojas v. Cigna Health and Life Ins. Co.*, 793 F.3d 253, 259 (2d Cir. 2015), finding that "'beneficiary' as it is used in ERISA, does not without more encompass healthcare providers."  *Id.* at 257.  The court was "persuaded that Congress did not intend to include doctors in the category of 'beneficiaries,'" explaining that "'[b]eneficiary,' clearly refers to those individuals who share in the benefits of coverage—medical services and supplies covered under their health care policy" and that a provider's "right to payment" under the plan "does not a beneficiary make."  *Id.*  Accordingly, Plaintiffs' argument that they have standing to sue United as a plan designated beneficiary fails.[10]

---

[9] United does not claim that Plaintiffs lack Article III standing, but instead asserts that Plaintiffs lack statutory standing to bring a claim for ERISA benefits.  *See Am. Psychiatric Assoc. v. Anthem Health Plans*, 50 F. Supp. 3d 157, 165 n.6 (D. Conn. 2014) (distinguishing between a challenge to the plaintiff's statutory standing and Article III standing); *see also Griffin v. Gen. Mills, Inc.*, No. 15 Civ. 12157, 2015 WL 9466979, at *2 (11th Cir. Dec. 29, 2015) ("Although courts have long applied the label of 'statutory standing' to the basis for decisions such as the district court's here, that [the plaintiff] lacked standing under ERISA, the Supreme Court has cautioned that this label is 'misleading' because the court is not deciding whether there is subject matter jurisdiction but rather whether the plaintiff 'has a cause of action under the statute.'  Put differently, we understand the district court's decision that [the plaintiff] lacked statutory standing to be a determination that she failed to state a claim under Federal Rule of Civil Procedure 12(b)(6)." (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387 n.4 (2014)).

[10] Plaintiffs suggest that this Court can ignore the clear holding of *Rojas*, 793 F.3d at 259, in favor of the Circuit's prior ruling in *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 329-30 (2d Cir. 2011).  Plaintiffs, however, are incorrect in their assertion that these decisions are inconsistent.  *Rojas* found that providers are not plan

### ii. Beneficiaries By Assignment

As stated, "[i]t is well-established in this Circuit that 'the assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA.'"  *Mbody Minimally Invasive Surgery, P.C.*, 2014 WL 4058321, at *3 (citing *I.V. Servs. of Am., Inc.*, 136 F.3d at 117 n.2); *see also Simon*, 263 F.3d at 178.  Plaintiffs claim that they obtained valid assignments from their patients in exchange for the provision of healthcare services and thus, have standing to sue. Am. Compl. ¶¶ 54-58.  However, the applicable healthcare plans contain an anti-assignment provision that bar assignments made without the consent of United:  "You may not assign your Benefits under the Policy to a non-Network provider without our consent."  *See id.* Ex. 1 at 66, Ex. 2 at 67 (same), Ex. 3 at 67 (same), Ex. 4 at 68 (same).  Accordingly, the Court must determine the effect of such a provision on the validity of Plaintiffs' purported assignments.

"[T]he validity of assignments for ERISA purposes is a question of federal common law[.]"  *Weisenthal v. United Health Care Ins. Co. of New York*, No. 07 Civ. 0945 (LAP), 2007 WL 4292039, at *4 (S.D.N.Y. Nov. 29, 2007) (citing *I.V. Servs.*, 136 F.3d at 117 n.2)); *see also Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 85 n.5 (2d Cir. 2001) ("in ERISA cases, state law does not control.  Instead, general common law principles apply."); *Schonholz v. Long Is. Jewish Med. Ctr.*, 87 F.3d 72, 79 (2d Cir. 1996) ("ERISA is a federal law regime for

---

designated beneficiaries where the plan provides that they may receive, but are not guaranteed, direct payments because the term "benefit" refers to "medical services and supplies," not payment.  793 F.3d at 257, 259; *see also Grasso Enterprises, LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040-41 (8th Cir. 2016) (citing *Rojas* approvingly); *Pa. Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 929 (7th Cir. 2015) (same). *Montefiore* recognized that where a healthcare provider obtains a valid assignment it may pursue ERISA benefit claims as a beneficiary by assignment but does not discuss a providers' ability to bring an action as a statutory beneficiary.  642 F.3d at 229-30.  Accordingly, the presumption that "[w]here a second panel's decision seems to contradict the first, and there is no basis on which to distinguish the two cases, we have no choice but to follow the rule announced by the first panel" is inapplicable.  *Tanasi v. New All. Bank*, 786 F.3d 195, 200 n.6 (2d Cir. 2015), *as amended* (May 21, 2015), *cert denied*, 136 S.Ct. 979 (2016).  Additionally, after Plaintiffs submitted their memorandum in opposition to United's motion ("Opposition"), the Second Circuit voted to deny *en banc* review of the *Rojas* decision.  No. 14 Civ. 3455 (2d Cir. Sept. 24, 2015) (Doc. 173).

regulating employee benefits designed to eliminate the threat of conflicting state and local

regulation of benefit plans . . . . We are not bound by New York law").[11]  To determine "whether

contract language prohibits assignment to a healthcare provider, courts apply traditional

principles of contract interpretation" and "interpret ERISA plans in an ordinary and popular

sense as would a person of average intelligence and experience."  *Neuroaxis Neurosurgical*

*Assoc., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 352 (S.D.N.Y. 2013) (citing

*Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004)); *Am.*

*Psychiatric Assoc.*, 50 F. Supp. 3d at 163 (courts "apply traditional principles of contract

interpretation to anti-assignment provisions.").  Because the "rules of contract law [apply] to

ERISA plans, a court must not rewrite, under the guise of interpretation, a term of the contract

when the term is clear and unambiguous."  *Neuroaxis Neurosurgical Assoc.*, 919 F. Supp. 2d at

352 (quoting *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76,

---

[11] Plaintiffs imply that New York law governs the validity of these assignments and that pursuant to New York law the assignments here are valid because "anti-assignment clauses do not render assignments void absent words specifically stating an assignment is 'void.'"  Pls.' Opp'n at 10 (citing *Pravin Banker Assoc., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 856 (2d Cir. 1997); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 226 (S.D.N.Y. 2014)).  In *Pravin*, the Second Circuit held that "[u]nder New York law, only *express* limitations on assignability are enforceable.  [T]o reveal the intent necessary to preclude the power to assign, or cause an assignment violative of contractual provisions to be wholly void, [a contractual] clause must contain express provisions that any assignment shall be void or invalid if not made in a certain specified way."  109 F.3d at 856 (emphasis and alterations in original); *see also Mosdos Chofetz Chaim, Inc.*, 14 F. Supp. 3d at 226-27 ("Under New York law, an assignment is valid even where an agreement generally prohibits assignments, unless the agreement specifies that an assignment would be invalid or void. . . . a contract lacks the requisite clear, definite, and appropriate language when it 'contain[s] no provision that the assignment made without consent should be void, . . . that an assignee would acquire no rights by reason of such assignment, [or] that the contractor shall not be required to recognize or accept any such assignment." (internal quotations and citations omitted)); *Semente v. Empire Healthchoice Assur., Inc.*, No. 14 Civ. 5823 (DRH) (SIL), 2015 WL 7953939, at *3 (E.D.N.Y. Dec. 4, 2015) (finding that an anti-assignment provision in an ERISA plan stating, "[a]ssignment of benefits to a non-network provider is not permitted," did not void such assignments because the "clause at issue here does not contain a definite declaration of the invalidity of an assignment").

The Court notes that neither *Pravin* nor *Mosdos* involved ERISA claims.  While *Semente* did involve ERISA claims, both parties agreed that New York law governed the plan, and therefore, the court did not analyze the anti-assignment provisions at issue there by reference to federal common law.  2015 WL 7953939, at *3, *3 n.3.

81 (2d Cir. 2009)).  Courts, however, may "draw inspiration from state law" "in discerning the content of federal common law . . . to the extent that state law is not inconsistent with the federal policies underlying ERISA."  *Id.* at 351.

The Second Circuit has not yet spoken on the effect of assignments made in violation of anti-assignment provisions in ERISA plans.  Other Circuit Courts, however, have concluded that where an ERISA-governed plan contains an unambiguous anti-assignment provision, assignments under that plan are invalid.  *See Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004) ("we are persuaded by the reasoning of the majority of federal courts that have concluded that an assignment is ineffectual if the plan contains an unambiguous anti-assignment provision"); *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 349, 352 (5th Cir. 2002) ("Applying universally recognized canons of contract interpretation to the plain wording of the instant anti-assignment clause[,]" which stated "[e]xcept as permitted by the Plan or as required by state Medicaid law, no attempted assignments of benefits will be recognized by the Plan," "leads inexorably to the conclusion that any purported assignment of benefits . . . would be void."); *City of Hope Nat. Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223, 229 (1st Cir. 1998) ("Consistent with the other circuits which have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties . . . . [S]traightforward language in an ERISA-regulated insurance policy should be given its natural meaning."); *Davidowitz v. Delta Dental Plan of California, Inc.*, 946 F.2d 1476, 1481 (9th Cir. 1991) ("conclud[ing] that ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan.").

District courts in this Circuit have followed this reasoning and, applying federal common law, have found that "where plan language unambiguously prohibits assignment, an attempted assignment will be ineffectual. . .  [and] . . . a healthcare provider who has attempted to obtain an assignment in contravention of a plan's terms is not entitled to recover under ERISA." *Neuroaxis Neurosurgical Assoc.*, 919 F. Supp. 2d at 351-52; *see also Mbody Minimally Invasive Surgery, P.C.*, 2014 WL 4058321, at *3 (finding the anti-assignment provision, which stated that "any attempt to assign benefits or payments for benefits will be void" was unambiguous and thus, the plaintiffs' alleged assignments were invalid); *Am. Psychiatric Assoc.*, 50 F. Supp. 3d at 162-63, 164 n.4 ("[i]t appears that the anti-assignment provisions in the . . . healthcare plans," which "prohibit assignment [of] . . . the right 'to receive benefits under the Benefit Program' and . . . [to] 'rights, benefits or obligations,'" "may preclude this type of assignment, because ERISA instructs courts to enforce strictly the terms of plans and an assignee cannot *collect* unless he establishes that the assignment comports with the plan." (emphasis in original)).

The *Neuroaxis* decision is particularly instructive because it upheld an anti-assignment clause that is substantially similar to the clause here.  *Compare Neuroaxis Neurosurgical Assoc.*, 919 F. Supp. 2d at 353 ("[a] covered person may assign his or her right to receive plan benefits to a health care provider only with the consent of the benefits administrator, in its sole discretion, except as may be required by applicable law" (the "Consent Clause"))*, with* Am. Compl. Ex. 1 at 66 ("You may not assign your Benefits under the Policy to a non-Network provider without our consent.").[12]  The *Neuroaxis* court found that "[t]he plain meaning of the Consent Clause[] is that assignments are prohibited without the consent of the administrator" and that in the absence

---

[12] Plaintiffs contend that *Neuroaxis* is less persuasive because it "failed to consider the Second Circuit's decision in *Pravin*."  Pls.' Opp'n at 10 n.12.  However, the *Neuroaxis* court's purported "failure" to address the *Pravin* decision is entirely consistent with the requirement that federal common law, not New York law, governs ERISA actions.

of consent the clause unambiguously prohibited assignments.  *Id.* at 354, 356.  The *Neuroaxis*

court also rejected the argument urged by Plaintiffs here—"that the breach of anti-assignment

clause[] by the Plan members entitles the defendants to damages from the Plan members, but

does not affect the validity of the assignments to" the plaintiffs.  *Id.* at 356 (internal quotations

omitted).  The court explained that this argument "relies on the principle under New York law

that covenants not to assign [are treated] as personal covenants . . . , unless the language of the

covenant clearly indicates a stronger intent[,]" while "federal courts routinely enforce anti-

assignment clauses in ERISA-governed welfare plans."  *Id.*  The *Neuroaxis* court concluded that

if consent was not obtained, the assignments would be void based on the plain meaning of the

Consent Clause.  *See id.*[13]

     The anti-assignment provision here is similarly unambiguous.  Accordingly, the patients'

assignments to Plaintiffs are void pursuant to the unambiguous language of the provision.  This

does not end the inquiry, however.  Plaintiffs may yet have standing if United waived or is

estopped from relying on the provision.

### iii.   Enforceability of the Anti-Assignment Provision

     According to Plaintiffs, United's long-standing pattern and practice of directly paying

Plaintiffs for services provided under the plans is sufficient to show that United consented to the

assignments, or is estopped from or waived its reliance on the anti-assignment clause.  Pls.'

Opp'n at 10-11.  Plaintiffs allege that "[e]ach out-of-network Plaintiff directly submitted the

claims electronically or *via* a claim form to United, and United routinely paid the Plaintiffs

---

[13] Instead of finding the assignments void, however, the *Neuroaxis* court granted the plaintiff's request to take discovery to determine whether the plaintiffs sought and received consent even though "[t]he plaintiff ha[d] offered no evidence that consent was requested or received for any assignment[.]" *Id.* at 354.  Here, however, Plaintiffs do not allege that they sought and received consent and do not request discovery to determine whether such consent was sought and received.  Instead, Plaintiffs contend that United's direct payment to and course of conduct with Plaintiffs establishes that United consented to the assignments, or waived or is estopped from relying on the anti-assignment provision as a matter of law.

directly." Pls.' Opp'n at 11; Am. Compl. ¶¶ 67-69, 99-101, 146-148.  Plaintiffs also allege that

United sent Plaintiffs letters requesting that they provide documentation to support previously

paid claims, which Plaintiffs refused to comply with on the basis that United had no legal right to

make such requests beyond the Claims Regulation thirty-day time period.  *See* Am. Comp. ¶¶

73-74, 82, 105-106, 152.  After Plaintiffs' refusal, United reiterated its requests, notified

Plaintiffs that it considered payments for undocumented services to be overpayments, and

requested Plaintiffs refund the allegedly overpaid amounts.  *Id.* ¶¶ 62, 75-88, 107-110, 116, 153-

157, 160.  United then recouped the allegedly overpaid amounts by offsetting these amounts

from approved claim payments owed to the same providers for services provided to different

patients under different healthcare plans.  *Id.* ¶¶ 62, 91, 116, 160.  United does not dispute these

facts but instead contends that these actions cannot be interpreted as its consent or waiver, and do

not require that it be estopped from relying on the anti-assignment provision.  Defs.' R. Mem. at

4.  The Court finds that United is neither estopped from enforcing the anti-assignment provision,

nor waived its rights under it.

Although the Second Circuit has not yet addressed whether a healthcare company may be

estopped from relying on or waive its right to enforce an anti-assignment provision, it has found

the equitable doctrines of estoppel and waiver are applicable to ERISA actions.  *See Ludwig v.*

*NYNEX Serv. Co., a wholly owned subsidiary of NYNEX Corp.*, 838 F. Supp. 769, 793 (S.D.N.Y.

1993) (noting that the Second Circuit Court has recognized that principles of estoppel can apply

in ERISA cases under "extraordinary circumstances" (citing *Lee v. Burkhart*, 991 F.2d 1004,

1009 (2d Cir. 1993)); *Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 382 (2d Cir. 2002)

(finding "that waiver applies in the particular situation presented by this ERISA case" where the

defendant "knew of [the plaintiff's] claim of disability, chose not to investigate it, and chose not

to challenge it"); *Ludwig*, 838 F. Supp. at 796 ("the doctrine of waiver is applicable to ERISA

cases as a matter of federal common law" (citing *Masella v. Blue Cross & Blue Shield,* 936 F.2d

98, 107-08 (2d Cir. 1991)); *see also Mbody Minimally Invasive Surgery, P.C.*, 2014 WL

4058321, at *3 ("estoppel can only be applied in the ERISA context in 'extraordinary

circumstances.'"); *Neuroaxis Neurosurgical Assoc., PC*, 919 F. Supp. 2d at 355.

### 1.  Estoppel

To establish estoppel in an ERISA action, a party must sufficiently allege "(1) a promise,

(2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise

is not enforced, and, as stated, must adduce [ ] . . . facts sufficient to [satisfy an] 'extraordinary

circumstances' requirement as well." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101,

109 (2d Cir. 2008) (alterations in original) (internal quotations omitted); *see also Neuroaxis*

*Neurosurgical Assoc., PC*, 919 F. Supp. 2d at 355.  Plaintiffs here have not alleged

"extraordinary circumstances" necessary to invoke estoppel relief.   While the "Second Circuit

has not enunciated what facts are required for 'extraordinary circumstances,'" *Kosswig v. Timken*

*Co.*, No. 06 Civ. 499 (PCD), 2007 WL 2320537, at *10 (D. Conn. Aug. 10, 2007), courts have

found that "intentional inducement and deception" and "[w]ritten or oral interpretation of an

ambiguous term may . . .  satisfy this requirement where circumstances are 'beyond the

ordinary[,]'" such as "where an employer promises severance benefits to persuade an employee

to retire and then reneges." *Ramos v. SEIU Local 74 Welfare Fund*, No. 01 Civ. 2700 (SAS),

20002 WL 519731, at *6 (S.D.N.Y. Apr. 5, 2002) (citing *Schonholz*, 87 F.3d at 78; *Devlin*, 173

F.3d at 102).  Here, however, Plaintiffs fail to allege intentional inducement or deception by

United or any other conduct that may be considered "beyond the ordinary."  In fact, in *Mbody*

*Minimally Invasive Surgery, P.C.*, 2014 WL 4058321, at *3, the court found that it is entirely

routine for a health insurance company to pay a healthcare provider directly for services rendered under the plan.  Accordingly, Plaintiffs have not sufficiently alleged that United should be estopped from relying on the anti-assignment provision to void Plaintiffs' assignments, and thus their standing.[14]

Moreover, the plain language of the anti-assignment provision allows United, in its discretion, to pay out-of-Network providers directly even where no valid assignment exists.  *See* Am. Compl. Ex. 1 at 66.  The fact that United made direct payments to Plaintiffs, as it was explicitly authorized to do under the plan, does not estop it from raising the anti-assignment provision to challenge Plaintiffs' standing.  *See Neuroaxis Neurosurgical Assoc., PC*, 919 F. Supp. 2d at 355-56 (finding that "[p]rior payments to healthcare providers do not create a viable estoppel claim . . . where ERISA plans unambiguously prohibit assignments." (citing *Riverview Health Inst. LLC*, 601 F.3d at 521)); *Renfrew Ctr. v. Blue Cross and Blue Shield of Cent. New York, Inc.*, No. 94 Civ. 1527 (RSP) (GJD), 1997 WL 204309, at *4 (N.D.N.Y. Apr. 10, 1997) ("[the defendant's] retention of discretion to make direct payment is in no way inconsistent with disallowing patient assignment. . . . It is untenable to read this direct payment provision as undermining the very anti-assignment clause that makes [the defendant's] direct payment

---

[14] The plan documents, which Plaintiffs attach to their Amended Complaint, *see* Exs. 1-4, further supports Plaintiffs inability to establish estoppel because United's actions allegedly supporting Plaintiffs' estoppel argument are expressly authorized by the plans.  *See Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 521 (6th Cir. 2010) (denying the plaintiffs leave to amend their complaint to add a federal estoppel claim because the "[p]rinciples of estoppel . . . cannot be applied to vary the terms of unambiguous plan documents . . . . estoppel requires reasonable or justifiable reliance by the party asserting the estoppel [and a] . . . party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party" (internal citations and quotations omitted)).

discretion meaningful."); *see also Mbody Minimally Invasive Surgery, P.C.*, 2014 WL 4058321, at *3.[15]

### 2. Waiver

"Waiver arises when a party has voluntarily or intentionally relinquished a known right." *Ludwig*, 838 F. Supp. at 796; *see also Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) ("waiver of a contract right must be proved to be intentional, the defense of waiver requires a clear manifestation of an intent by plaintiff to relinquish her known right and mere silence, oversight or thoughtlessness in failing to object to a breach of the contract will not support a finding of waiver."); *Marvel Entertainment Group, Inc. v. ARP Films, Inc.*, 684 F. Supp. 818, 821 (S.D.N.Y. 1988) ("a stipulation against assignment may be waived or modified by a course of business dealings.").  Here, Plaintiffs' argument that United waived the anti-assignment provision by its direct payment to Plaintiffs also fails because United was explicitly permitted to pay Plaintiffs directly under the plan in its discretion.  *See Mbody Minimally Invasive Surgery, P.C.*, 2014 WL 4058321, at *3 (rejecting the plaintiff's argument that the defendants waived the anti-assignment provision by providing direct payment to the plaintiffs because "[h]ealth insurance companies routinely make direct payments to healthcare providers without waiving anti-assignment provisions."); *Advanced Orthopedics and Sports Medicine v. Blue Cross Blue Shield of Mass.*, No. 14 Civ. 7280 (FLW), 2015 WL 4430488, at *7 (D.N.J. July 20, 2015) (finding "a direct payment does not constitute a waiver of

---

[15] Plaintiffs reliance on *Lutheran Med. Ctr. of Omaha, Neb. v Contractors, Laborers, Teamsters and Eng'rs Health and Welfare Plan*, 25 F.3d 616, 619 (8th Cir. 1994) *abrogated on other grounds by Martin v. Arkansas Blue Cross and Blue Shield*, 299 F.3d 966 (8th Cir. 2002), is misplaced.  There, the Eighth Circuit found that in addition to the defendant paying providers directly for several years, the Summary Plan Description stated "that a participant 'may assign benefits to a hospital or doctor, if you wish[,]'" which together established that "the Plan's actual practice is not in conformity with its strict anti-assignment provision."  Here, Plaintiffs have identified no similar provision allowing assignment without consent.

the anti-assignment clause" where "the terms of the Plan permit direct payment to healthcare providers").

"[U]nambiguous language in an ERISA plan must be interpreted and enforced according to its plain meaning [and w]hen the language of an ERISA plan is unambiguous, [the court] will not read additional terms into the contract." *Connors v. Conn. General Life Ins. Co.,* 272 F.3d 127, 137 (2d Cir. 2001); *see also CIGNA Life Ins. Co. of New York v. Gambuti*, No. 09 Civ. 10147 (KMK), 2011 WL 3424106, at *3 (S.D.N.Y. Jan. 3, 2011)*, report and recommendation adopted*, No. 09 Civ. 10147 (RO), 2011 WL 3370351 (S.D.N.Y. Aug. 2, 2011).  Language "is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . . agreement." *Critchlow*, 378 F.3d at 256.  To find that United implicitly waived the anti-assignment provision by acting pursuant to the direct payment provision is to create an ambiguity where none exists. *See Aviation W. Charters, Inc. v. United Healthcare Ins. Co.*, No. 14 Civ. (00338) (PHX) (NVW), 2014 WL 5814232, at *3 (D. Ariz. Nov. 10, 2014) ("The provision states that any assignment requires United's consent and, without an assignment, United may choose to pay the claim through the beneficiary or directly to the non-Network provider."); *but see Premier Health Ctr., P.C. v. UnitedHealth Group*, No. 11 Civ. 425 (ES), 2014 WL 4271970, at *15 (D.N.J. Aug. 28, 2014) ("Defendants are correct that a direct payment of benefits to a non-network provider and a subsequent repayment demand for all or some of those benefits is completely consistent with the language of United's anti-assignment provisions. . . . This language merely makes clear that United may, in its discretion, unilaterally waive the anti-assignment provision and pay benefits directly to the provider."), *reconsideration denied*, No. 11 Civ. 425 (ES), 2014 WL 7073439 (D.N.J. Dec. 15, 2014).

19

The Court acknowledges that other courts in this District have interpreted facts and language similar to that at issue here as establishing consent, estoppel, and/or waiver. *See Neuroaxis Neurosurgical Assoc., PC v. Cigna Healthcare of New York, Inc.*, No. 11 Civ. 8517 (BSJ) (AJP), 2012 WL 4840807, at *3 (S.D.N.Y. Oct. 4, 2012) (finding that the defendant's "long-standing pattern and practice of direct payment to [the plaintiff] is sufficient to show its consent to [the plaintiff's] assignments" notwithstanding the plan's anti-assignment provision); *Biomed Pharm., Inc. v. Oxford Health Plans (NY), Inc.*, No. 10 Civ. 7427 (JSR), 2011 WL 803097, at *5 (S.D.N.Y. Feb. 18, 2011) (finding the defendant was "estopped from relying on the anti-assignment provision in light of [their] own long-term pattern and practice of accepting and paying on [the plaintiff's] direct billing" because the plan "either expressly authorizes patients to assign their claims to healthcare providers without [the defendant's] consent, or, at the very least, creates an ambiguity within the contract that should be construed against the drafter."); *Protocare of Metro. N.Y., Inc. v. Mut. Ass'n Adm'rs, Inc.*, 866 F. Supp. 757, 761-62 (S.D.N.Y. 1994) ("[a]lthough the Plan does contain an anti-assignment provision, it also provides for the possibility of direct payment to the health care provider [and i]f the Plan had intended to prevent all assignments . . . then it would not have preserved the discretion to pay [the plaintiff] directly.").[16]   However, the Court finds more persuasive those decision that give effect to the plain language of anti-assignment provisions.

---

[16] District courts outside of this Circuit have likewise reached different outcomes. *See, e.g.*, *Advanced Orthopedics and Sports Medicine*, 2015 WL 4430488, at *7 (finding "a direct payment does not constitute a waiver of the anti-assignment clause" (citing *Mbody Minimally Invasive Surgery, P.C.*, 2014 WL 4058321, at *3)); *Aviation W. Charters, Inc.*, 2014 WL 5814232, at *3 (rejecting the plaintiff's argument on summary judgment that "United waived its right to enforce the anti-assignment provision by making direct payment to Plaintiff and by communicating directly with Plaintiff"); *but see DeMaria v. Horizon Healthcare Services, Inc.*, No. 11 Civ. 7298 (WJM), 2015 WL 3460997, at *8 (D.N.J. June 1, 2015) (applying New Jersey contract law and finding that "a party may waive an anti-assignment provision via a course of dealing that renders the anti-assignment provision inequitable."); *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 922-23 (M.D. Tenn. 2013) (finding on a motion to dismiss the defendant was estopped from relying on the anti-assignment provision where the

Beyond direct payments to Plaintiffs, a closer question is whether United's communications with Plaintiffs requesting documentation and eventual reimbursement is sufficient to allege waiver.[17]  Plaintiffs do not affirmatively allege that United failed to raise the anti-assignment provision in its post-payment communications with Plaintiffs, which may in and of itself be reason to grant United's motion.  *See Care First Surgical Center v. ILWU-PMA Welfare Plan*, No. 14 Civ. 1480 (MMM), 2014 WL 6603761 at *20 (C.D. Cal. July 28, 2014).  However, United's letters attached to Plaintiffs' Opposition[18] include no reference to the anti-assignment provision; nor do Plaintiffs' descriptions of United's communications with them.  *See* Am. Compl. ¶¶ 73, 75, 77-88, 105, 107, 109-112, 115, 152, 153, 155-157.  Even if United never raised the anti-assignment provision, nothing in these communications plausibly suggests that United intended to waive its right under the provision.  *See Mbody Minimally Invasive Surgery, P.C.*, 2014 WL 4058321, at *3 ("That defendants did not raise the anti-assignment provision at the time they denied or reduced payment is irrelevant because the anti-assignment provision was not a factor [in] determining the payment amount.  Plaintiffs' argument is simply another way of re-arguing that defendants waived the anti-assignment provision by making direct payments to plaintiffs—an argument courts have repeatedly rejected.").  As alleged, the dispute

---

defendant "was on notice that [the plaintiff] sought payment pursuant to a patient assignment, [the plaintiff] was not privy to and had no legal right to access the underlying plan terms" while the defendant "possessed the underlying plans (and therefore knew their terms), . . . denied [the plaintiff's] technical component claims . . . for reasons other than validity of assignment . . . *paid* the physicians who sought payment . . . pursuant to assignments from the same patients . . . [and] regularly paid [the plaintiff's] claims made pursuant to patient assignments.") (emphasis in original).

[17] Unlike estoppel, courts have not required "extraordinary circumstances" to find waiver.

[18] Plaintiffs attach two of United's letters to Kantor requesting medical records and recoupment.  Declaration of Richard J. Quadrino in Support of Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss ("Quadrino Decl.") ¶¶ 2, 4, Exs. 1, 3.  Plaintiffs also attach Piken's response, through counsel, to a letter from United substantial similar to the one sent to Kantor.  *Id.* ¶ 3, Ex. 2.  Plaintiffs represent that United's letters to Kantor requesting medical records and recoupment "contain the same language" or "are identical" as the letters sent to other Plaintiffs.  *Id.* ¶¶ 2, 4.  Plaintiffs also represent that Piken's response letter to United is "similar in content" as Plaintiffs' other letters sent to United.  *Id.* ¶ 3.

between the parties giving rise to the post-payment communications implicates only payments made to Plaintiffs, allowed under the plan, and United's ability to audit and recoup these payments. While United requested documentation to support its previous payments and ultimately recouped payments from Plaintiffs for their failure to comply, nothing about these requests suggest that Plaintiffs were being treated as assignees of their patients' benefits rather than as providers United has the discretion to pay directly.[19]

However, some courts outside of this District have reached a different conclusion based on the parties "course of dealing." *See DeMaria*, 2015 WL 3460997, at *8 (D.N.J. June 1, 2015); *Premier Health Ctr., P.C. v. UnitedHealth Group*, No. 11 Civ. 425 (ES), 2012 WL 1135608, at *2 (D.N.J. Apr. 4, 2012); *Gregory Surgical Services, LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. 06 Civ. (0462) (JAG), 2007 WL 4570323, at *4 (D.N.J. Dec. 26, 2007). In *Premier Health*, the plaintiffs made similar allegations to those raised here—that the defendants, United and its subsidiaries, engaged in improper post-payment auditing of previously paid claims and demanded repayment for alleged overpayments in violation of the procedures established by ERISA. 2012 WL 1135608, at *2. When the defendants moved to

---

[19] Nor do Plaintiffs' responses suggest that they were acting as assignees. Quadrino Decl. Ex. 2. While Plaintiffs' letters discuss Plaintiffs' ability to bring an ERISA action pursuant to Section 502 for United's purported violation of the Claims Regulation and recoupment of alleged overpayments, this does not plausibly allege that Plaintiffs' were asserting their rights as assignees for two reasons. *First*, according to the letter from Piken's counsel, United never responded to counsel's previous letters and mere silence may not establish waiver. *See id.* ("We have been repeatedly informing Optum, through letters to you on behalf of various clients of our firm, that our clients object to such audits and we have fully explained our client's legal positions, grounded in ERISA. No response was ever received from you or from anyone else whom you stated your [sic] forwarded our letters to."); *see also* Am. Compl. ¶¶ 90 ("Defendants refused to and failed to produce any of the requested documents or data requested" in counsel's letter), 114 (same), 159 (same). The only allegation that United responded to counsel's letter—"Optum responded . . . stating that because Dr. Piken did not submit the medical records requested, Defendants determined that the paid services at issue were 'not documented' and, therefore, Dr. Piken must repay to Defendants the payments he received for those services[,]" Am. Compl. ¶ 115—is, as already stated, insufficient to establish that United intended to waive its rights. *Second*, the letter asserts Dr. Piken's rights, not the patient's rights. *See id.* (asserting that United's purported violations of the Claims Regulation "has triggered numerous *rights of Dr. Piken*, including the right to obtain various types of documentation . . .") (emphasis added).

dismiss the complaint based on, *inter alia*, the plaintiffs' lack of statutory standing pursuant to the anti-assignment provision, the plaintiffs contended that the defendants had waived or were estopped from asserting the provision based on their course of conduct towards the plaintiffs.  *Id.* at *3, *9.  The court found that under New Jersey law, which states that "an anti-assignment clause may be waived by . . . a course of dealing, or even passive conduct," that the defendants waived the anti-assignment provision through its course of conduct, which went "beyond direct reimbursement for medical services" and involved "regular interaction between United and Premier prior to and after claim forms were submitted, without mention of United's invocation of the anti-assignment clause . . . includ[ing]:  letters from [United's subsidiary] notifying Premier of overpayments, demanding a refund, and notifying Premier of the proper procedure to dispute [its] decision; telephone calls between [United's subsidiary] and Premier about Premier's appeals; and communications with Premier via e-mail regarding recoupments for the overpayments."  *Id.* at *9-10 (citing *Gregory Surgical Services, LLC*, 2007 WL 4570323, at *4).

As a preliminary matter, *Premier Health* applied New Jersey law, not federal common law, which as discussed above requires giving effect to the plain language of the plan.  *See* 2012 WL 1135608, at *9; *see also DeMaria*, 2015 WL 3460997, at *8; *Gregory Surgical Services, LLC*, 2007 WL 4570323, at *3.  Moreover, by Plaintiffs' own reckoning, Fishel and Kantor did not engage in the appeals process—Plaintiffs simply denied United's request for information and filed this suit to challenge United's post-payment audit practices.  *See* Am. Compl. ¶¶ 65-96, 142-165.  While Piken appealed some of the alleged overpayments identified by United, the only allegations regarding the parties' communications were that United acknowledged an appeal was filed but determined that "the overpayment refund request remains valid."  *Id.* ¶¶ 111, 112.  To the extent that the *Premier Health* court's decision would remain the same had the plaintiffs in

that case not engaged in the appeals process, this Court respectfully disagrees for the reasons already discussed *supra*. *See also Aviation W. Charters, Inc.*, 2014 WL 5814232, at *3 (finding on summary judgment that "Plaintiff has submitted no evidence of United's alleged actions constituting waiver" because the "other actions [beyond direct payment and communications] claimed to be inconsistent with intent to enforce the anti-assignment provision . . . . appear to be communications regarding claims made by Plaintiff, payments made to Plaintiff, and recoupment from Plaintiff, which likely would not show that United dealt with Plaintiff as though it were 'standing in the shoes' of the Beneficiary.").

Accordingly, the Court finds that United did not waive, nor is United estopped from relying on the anti-assignment provision. Because the anti-assignment provision is valid and enforceable, Plaintiffs lack statutory standing to bring these claims, and thus United's motion to dismiss is GRANTED.[20]

### b. Leave to Amend

United requested in its opening brief that the Court grant its motion with prejudice. Pls.' Mem. at 1, 2, 25; *see also* Pls.' R. at 1. Plaintiffs, in response, did not request leave to amend in the event the Court granted United's motion, nor did Plaintiffs suggest that any additional allegations that may be added to the Amended Complaint would address United's challenges. *See* Pls.' Opp'n Mem. Amendment is generally "not warranted absent some indication as to what appellants might add to their complaint in order to make it viable." *Shemian v. Research In Motion Ltd.*, 570 Fed. App'x 32, 37 (2d Cir. 2014) (summary order); *Porat v. Lincoln Towers Community Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("Especially given that plaintiff's counsel

---

[20] Because the Court finds Plaintiffs do not have statutory standing to bring the claims asserted in the Amended Complaint, the Court need not address United's other arguments for dismissal, including that United is not a proper defendant in the action or that United's post-payment audit practice is lawful under the Claims Regulation.

did not advise the district court how the complaint's defects would be cured, upon all the facts of this case we find no abuse of discretion and decline to remand for repleading."); *but see Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 605 (S.D.N.Y. 1998) ("where the possibility exists that the defect can be cured, leave to amend at least once should normally be granted unless doing so would prejudice the defendant." (citing *Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 253 (2d Cir. 1991)). The Court grants United's motion with prejudice.

### V. Conclusion

For the reasons set forth above, United's motion to dismiss is GRANTED with prejudice. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 63, and to close the case.

It is SO ORDERED.

Dated:    March 25, 2016
          New York, New York

Edgardo Ramos, U.S.D.J.

25